Good afternoon, your honor, yes, I'm Bruce Fine and I'm representing the Appellant. The Fox parties, collectively referred to them as the Appellees, they have a steep and to establish Federal Question Subject Matter Jurisdiction under State Law CPLR 7515, and I think the questions can all be answered by the U.S. Supreme Court's governing decision in Gunn v. Minton. You may recall, your honors, in that unanimous decision authored by Chief Justice John Roberts, he began with the proposition that in the ordinary case for Federal Question Subject Matter Jurisdiction, a claim arises under the law that created the cause of action, and no one disputes that the cause of action here was created by New York State law. So that at the starting point discredits any Federal Question Subject Matter Jurisdiction, but the court went on to state that there is, in the court's words, an extremely rare exceptions to this particular rule, this is 568 U.S. at 257, extremely rare exceptions to the rule that the law that creates the cause of action establishes whether or not there's Federal Question Subject Matter Jurisdiction, but to fall within that extremely rare case, the court established very, very strict standards, and there are three which the Fox parties are unable to surmount. The first and most evident is that the court stated that if the Federal Question Subject Matter Jurisdiction must not disrupt the Federal-State balance struck by Congress, it is undisputed that the Congress struck concurrent jurisdiction between Federal and State courts in interpreting the Federal Arbitration Act. That is confirmed by Ruth Bader Ginsburg's decision in the Tandem Bank case saying that the State and Federal courts are partners in interpreting the FAA, and as Judge Carter recognized in his decision below certifying this case for interlocutory review, and as the Fox parties do not dispute, recognizing Federal Question Subject Matter Jurisdiction under 7515 would mean every single decision, every single filing of a State law claim in State court would automatically be removable to Federal court, and there no longer would be any Federal-State balance interpreting the FAA under CPLR 7515. The balance would not only be disrupted, it would be annihilated. There would be no longer concurrent jurisdiction. Every single 7515 case would be decided in Federal court, and that on its face disqualifies Federal Question Subject Matter Jurisdiction in these circumstances. Your first three minutes have expired. It makes you wonder, doesn't it, Mr. Fein, this is Judge Wesley, that you think the New York Legislature would distrust their own State court system in favor of Federal courts? That would be a very obtuse intent to impute to the New York Legislature, I agree with you exactly. Mr. Fein, but one answer to that might be that they didn't have to put that language in there. They could have just had the prohibition, and not said, except for inconsistent with Federal law. And then we'd be looking at, clearly, an affirmative defense that would not be subject to removal, and no Federal question. What explains their putting that in there? If I could just finish, except their acknowledgment of the prevalence of the FAA. I think, Your Honor, it could be acknowledged that they're recognizing that's an affirmative defense. An affirmative defense doesn't create Federal Question Subject Matter Jurisdiction. As you well know, there are canons of construction, and an exception is typically the burden of approving an exception is typically placed on the party claiming it, and this would be, in this instance, the Fox Party. In interpreting Section 7515, you can't get bound up by rules of thumb of canons of construction, as Justice Thomas recently stated. You have to look at the ultimate standard as statutory intent. Remember, 7515 is a landmark remedial statute in favor of the victims of sexual harassment, and now any employment discrimination claim. The crippling effect in vindicating these claims, if they're subject to mandatory arbitration in secret, mandatory arbitration typically favors repeat customers, like employers. The statute didn't have to recite the exception for a supremacy clause defense against it to be raised in state court, did it? I agree with that, Your Honor, but that doesn't mean sometimes you can have redundancy. It doesn't state the obvious. I mean, the exception states the obvious. If 7515 didn't have the exception provision in it, then someone could still come in in state court and say, well, the Supreme Court has interpreted the FAA to allow arbitration of discrimination claims in cases covered by the FAA. This contract, because it clearly falls within the provisions of the FAA, precludes the application of 7515, right? It could have been drafted in that way, but I think that you would have to ask, what policy? There was no need for the exception. The exception stated nothing more than that which already existed. But sometimes there is redundancy. All the legislators aren't necessarily judges as astute as you are, and if you have to ask, I believe, Your Honor, what would be the policy advanced by the New York legislature by imposing the burden on the plaintiff rather than making an affirmative defense? The Fox parties are unable to establish any policy consistent with the remedial objective of 7515, and also if you look at the actual text of the exception, it doesn't say except we're inconsistent with the FAA, it says except we're inconsistent with federal law. It would mean if you read it literally that the plaintiff would have to allege, if this interpreted as the burden is on the plaintiff to prove the lack of inconsistency, that there's nothing in any of the CFR, in any of the US code, in any federal decisions, including the FAA, that are inconsistent with 7515. The pleading would start to look like war and peace in terms of its length. If you just look at the language, they use all federal law, it's not just the FAA, and we think that a fair reading of the statutory intent here in light of its remedial objective is one that would place the burden on the defendant as an affirmative defense, but even if that's not true, no one can deny that an independent reason for not finding federal question subject matter jurisdiction is the complete annihilation of the federal state balance struck by Congress in conferring concurrent jurisdiction on both federal and state courts in interpreting the FAA, in which the interpretation that the Fox Party proposed annihilates the concurrent jurisdiction every time 7515 is brought in state court, it goes to federal court. No, but I don't understand that argument, because in fact, the balance already exists, the situation already exists, it doesn't change the fact that the FAA has precedence. That exists whether or not this provision's in there anyway. So the federal state balance argument, I'm not sure I understand. The only question would be the burden of proof, and whether it's an affirmative defense or has to be pledged by the plaintiff. Go ahead, I think that the balance is really already in place, right? No, I don't think that's true, Your Honor, because before, if you interpreted 7515, it would be clear that a plaintiff would have a choice if they brought a claim in which FAA was an issue, it could be in either federal or state court. Indeed, in this very case, before 7515 was enacted, and the appellant had brought sexual harassment lawsuit against the Fox Party, they indeed invoked the FAA before Judge Cohen, the state court, interpreted, again, this is pre-7515, and sent the case to arbitration. Now what changes is that, in the interpretation when you make this as an element, I mean, the FAA is an element of the plaintiff's cause of action, then the state has no jurisdiction ever, because you can automatically remove any CPLR 7515 case to the federal courts. The state court will never interpret the FAA again under 7515. That's an absence of concurrent jurisdiction, it doesn't leave the status quo undisturbed. If I could continue, Your Honors, and remember these criteria that we're addressing here, the federal-state balance, does this necessarily raise a federal question, and the third I'll address now, substantiality to the federal system as a whole, they're all independent grounds for denying federal question subject matter jurisdiction here. The third one I'd like to address now is the substantiality of the issue to the federal system as a whole. Well the relevant federal interest here is in maintaining concurrent jurisdiction between state and federal courts in interpreting the FAA. That is the interest that Congress endorsed in deciding against giving exclusive jurisdiction to federal courts in interpreting the FAA. And there is no federal interest, certainly not one endorsed by Congress, in enabling every single 7515 defendant in a state court proceeding to immediately get into federal court because of federal question subject matter jurisdiction. There's not only not a federal interest, it's contrary to the federal interest. Mr. Fine, your time has run out, but you've got two minutes rebuttal. You can take the two minutes now, or you can reserve after Attorney Rhodes' argument. Your Honor, I'd like to reserve the time for rebuttal, but thank you for asking. Thank you, Mr. Fine. All right, Attorney Rhodes? Yes, Your Honor, may it please the court, Harker Rhodes of Kirkland & Ellis, for the appellees. The district court correctly found federal jurisdiction over this case under the gun factors. First, Panteros' case necessarily raises an issue of federal law. Her case relies on an unusual state statute that expressly incorporates federal law and makes her right to relief explicitly and necessarily depend on a federal question. As the First Circuit held in the Rhode Island Fisherman's Alliance case, the only other case addressing a similar state statute, that, quote, express incorporation of federal law into the state statute on which the plaintiff's cause of action is grounded, end quote, necessarily raises a federal issue. And that's confirmed in this case in particular because, as the district court recognized, Panteros' contrary view that the consistency clause simply sets forth an affirmative defense would make the relevant statutory language entirely superfluous. Second, the federal question here is also substantial. Panteros' right to release depends on whether a rule invalidating any agreement to arbitrate certain claims is consistent with federal law, including the Federal Arbitration Act. As the district court recognized, there is a significant federal interest in ensuring uniform enforcement of the Federal Arbitration Act and in the liberal federal policy favoring arbitration. Third, allowing federal jurisdiction here poses no risk of disruption to the federal state balance. On the contrary, given the significant federal interest involved and the pure question of federal law presented, deciding this case is well within the normal role of the federal court. Panteros suggests that recognizing federal jurisdiction here would somehow disrupt the concurrent jurisdiction of federal and state courts to apply the FAA. But in fact, it's Panteros' view that would create exclusive state jurisdiction over Section 7515 claims, even though those claims raise issues of federal law. As such, it's Panteros' view that would disrupt the concurrent jurisdiction of the federal and state courts over these issues. The district court's decision should be affirmed. With that introduction, what do you make of the. OK, go ahead. Go ahead. Mr. Rhodes, presume that 7515 didn't exist or it didn't have the exception language in it. And you're in state court and Ms. Panteros seeks a stay of the arbitration. Wouldn't her application for a stay necessarily raise or would it not necessarily, but wouldn't it raise the issue of the scope of the FAA? Your Honor, the application for a stay in that context would necessarily raise the scope of the FAA. Well, let's take it. So let's not take it. Let's not take it as a discrimination case. Let's take it as some other kind of case that there is an arbitration clause and the jurisdiction and the defendant says, wait a second, the Supreme Court has already ruled the FAA applies here. Supreme Court has already ruled that the FAA preempts this area and federal law then requires that to to be arbitrated. That dispute raises an issue of federal law, doesn't it? Your Honor, to be precise, it does raise an issue of federal law, but not on the face of the well pleaded complaint. And so there wouldn't be federal jurisdiction. So it's the nature of it's the nature of the complaint itself or the statute itself. I mean, now had 7550 not had had the exception and said discrimination claims don't don't need to be arbitrated, it could be stayed. And even though it hadn't said it said nothing about the exception, there would be it would it would raise when the person sought the stay. It would raise the same issues in state court. Right. No, Your Honor. Not on the face. Why not? Why not? Because you'd come in and say, wait a second. Supreme Court has already said this. This contract is between a multinational corporation and individual. It clearly brings into play the interstate commerce clause. The FAA clearly applies it. That's apparent from the face of the complaint. And therefore, Supreme Court has said that federal law preempts us from this kind of statute, from states, from exempting this from arbitration. That's exactly what you'd say. That that would be the defendant's response. Right. And so so what I'm saying to you is, how is it how is it that this statute, this statute necessarily raises a federal issue? It didn't have to say it to raise that issue, did it? Your Honor, to be clear, the fact that the issue would definitively arise in the litigation is not sufficient to meet the first gun factor in order to meet the first correct back. It has to be a complaint that necessarily raises the federal issue. I mean, but normally these necessarily raises the federal issues. Like, for example, New York ties its tax laws to federal tax laws. And so we've had cases where the questions about the tax exemptions with regard to securities and their entitlement to tax exempt status in certain federal situations are entitled to New York situation. We say that raises a federal issue and should be litigated in federal court because New York's tied itself to a federal standard. That's the Rhode Island case to some degree ties itself to a federal standard. This is not tying itself to a federal standard. It's stating an obvious supremacy limitation to a state with the state's power, isn't it? Well, Your Honor, if that language is interpreted just as an affirmative defense, then we agree it would not meet the first gun factor. The reason that this meets the first gun factor is because that language, except where inconsistent with federal law, is part of the plaintiff's prima facie burden. So and whose law decides that issue? State law, right? Whether it's necessary to plead it. That's correct, Your Honor. OK. And have none of you have cited to Section 211 of McKinney's New York or of the New York statutory law, have you? No, Your Honor, I don't believe. Why didn't. Now, why didn't either one of you take the time to go and look at New York statutory interpretation instead of giving us all federal cases on statutory interpretation? To be clear, Your Honor, our brief does cite New York cases on statutory interpretation, particularly the light body case, which are you familiar with the differentiation between provisos and exceptions? That's correct, Your Honor. That's an exception takes out of a statute something that otherwise would be part of the subject matter is is the fact that this is not precluded by federal law, a part of her ability to get her claim arbitrated or avoid arbitration or is that a function of the supremacy clause? She she didn't it. That didn't have to be in a statute for that to exist, did it? In order to exist because of the statute, it exists because of the nature of the institution. In order for it to be part of her prima facie case, it did have to be in the statute in order for it to be part of an affirmative defense, the supremacy clause alone would be sufficient. So if that can tell us who best can tell us whether this is a pleading requirement or that it merely states the obvious and that wasn't intended under New York law to state a necessary element of a claim, the New York Court of Appeals, I would suspect, wouldn't you? Your Honor, it's certainly true that if this court is unsure on that point, the New York Court of Appeals can provide a definitive answer. But we submit that the answer is, do you resist us certifying this to the New York Court of Appeals if you can answer? Your Honor, our position is that the answer is sufficiently clear that there's simply no need to put the from what from what case of the New York Court of Appeals would you rely on? We rely on the roll case and all of its progeny, Your Honor, and and all of the New York case for fluidity. Again, as the district court correctly recognized, there's simply no purpose to that except where inconsistent with federal law clause, unless it is creating an element of the. Are any of those cases, cases that have incorporated a federal exception that that therefore, excuse me, that therefore under federal law, in essence, remove the ability of a state court, a state court to hear 7515 claims? No, Your Honor, those cases don't specifically involve this kind of statute. In fact, would you agree with me that if this is a pleading requirement that that that it does federalize all 7515 claims? No, not at all, Your Honor. Not all. What's the exception? In cases where the federal issue is not actually disputed, then it won't arise. In other words, if the parties agree that the federal law in one way or another is either consistent or is inconsistent, then the second gun factor would prevent that case from coming into federal court. And only if the federal issue that's disputed is substantial, actually disputed and won't upset the federal state balance, will this move into federal court. Now, I certainly take Your Honor's point that in many cases that issue will be actually disputed. And to the extent that the question is one of the application of the Federal Arbitration Act, the federal interest will certainly be substantial. But our view is that that simply confirms that in this particular case, where all four of the gun factors are met, the Section 1331 arising under jurisdiction extends to this claim. I'd particularly point to the fact that it's not entirely clear why Tantaros continues to insist that we haven't addressed the concurrent jurisdiction issue. Again, it is Tantaros' argument that would make this case exclusively heard only in the state courts and would not be allowing for concurrent jurisdiction in the federal courts. I see my time has expired. I would like to just briefly address the substantiality issue because I do think it's important. And I would just point the court there to the Broder case, where this court found that the federal interest in a federal law requiring cable operators to provide uniform rates over certain geographic areas qualifies as substantial. If that is a substantial interest, we respectfully submit that the federal interest in ensuring uniform arbitration under the Federal Arbitration Act is at least equally substantial. Thanks very much, Mr. Rhodes. Mr. Fine has reserved two minutes rebuttal. Thank you for honor. First, I would like to point out that we did address state law canons of interpretation, especially the exception proviso distinction, which the New York courts have basically erased and relied upon the fact that it's a canon under New York interpretive law, which is largely an echo of the federal standard, that the party who invokes an exception customarily has the burden of pleading and proving it. And the party who would get the benefit of the exception here are the Fox parties, surely not the plaintiff. Secondly, the Fox parties stated in their argument that the except we're inconsistent with the federal law is a very unusual, commas and arcane, unique provision in laws like this. Well, that clearly undercuts the statement that the issue extends. In this case, a federal jurisdiction extends beyond a simple case of Andrea Tantalus versus the Fox parties. And Gun V. Minton made it clear that even if an issue is decisive for the particular parties to a case that doesn't satisfy the substantiality standard, which speaks to the substantial impact on the federal interest as a whole. Secondly, the Fox parties argue that this case should be referable to any removable to federal court because of the interest in uniformity of interpreting the FAA. But if the interest of uniformity was thought overwhelming by the Congress, they would have granted exclusive jurisdiction over the FAA, the federal courts, which they clearly did not do. Moreover, it's wrong to suggest that simply because state courts may have concurrent jurisdiction, there isn't still an ultimate federal answer to ensure uniformity. It's called Supreme Court review by certiorari. And we have cited in our briefs numerous instances in which the Supreme Court of the Supreme Court of the United States has not been able to properly interpret the FAA and provide a decision that is uniform and binding on all the courts, federal and state. And we think that this argument that state courts cannot be trusted to faithfully interpret the FAA, not a skepticism that Fox enjoyed earlier when they permitted state court Judge David Cohen to interpret the FAA and sending this initial sexual harassment claim to arbitration before 1975-15. That simply is a rebuke. We think that's improperly put on state court judges saying they don't know how to interpret the FAA properly. They'll be biased against it. They will not follow the U.S. Supreme Court decisions. There's no evidence to support that kind of argument with regard to the claim that somehow that federal courts would be excluded from jurisdiction here. Now, if if the interpretation of 75-15 that we placed on the statute were accepted, we can put point the argument that the Fox party's himself made. If both parties agree that there is really no federal question jurisdiction here, court could arise in the context of a diversity claim where you're in the federal court under diversity and the FAA is alleged as a as a defense because of preemption. But the federal court would be quite entitled to interpret the FAA, even if the jurisdictional basis was diversity rather than federal question jurisdiction. So in the last one of the last points I would like to make here is that there simply is no policy argument that has any coherence at all to explain why the New York legislature in having this very broad landmark remedial statute to assist, not to undercut, to assist victims of sexual harassment or employment discrimination. What policy is advanced by saddling the plaintiffs with the burden of pleading and proving the lack of inconsistency with all federal law? And I think there's no answer that the Fox parties are able to give just because they were bullheaded. You know, they thought to distrust their federal, their own state courts. That seems to me very unpersuasive. Legislatures act with reasons, policy reasons. They don't just do things because of a tidiness or language that floats around without any purpose to it. And we think that should be dispositive and would be if a state court interpreted 7515 in determining who had the burden of pleading and proving this exception. Thanks very much. Thanks very much. We will reserve decision and we are adjourned. Thank you, Your Honor. Court is adjourned.